# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

James Alvarado (R-68527),     )
                                   )
          Petitioner,    )
                                   )    Case No. 18 C 488
        v.                )
                                   )    Judge John Robert Blakey
Randy Pfister,           )
                                   )
          Respondent.   )

## MEMORANDUM OPINION AND ORDER

Petitioner James Alvarado, a prisoner at the Stateville Correctional Center, filed this *pro se* 28 U.S.C. § 2254 petition challenging his LaSalle County conviction for the murder of his wife. Respondent has answered the petition, and Petitioner has replied. For the reasons stated herein, the Court denies the § 2254 petition [1] and declines to issue a certificate of appealability.

## Background & Procedural History

The background facts below are taken from the state appellate court decision in Petitioner's direct appeal following his second trial.[1] [18-1] at 1–7 (*People v. Alvarado*, 993 N.E.2d 1122, 1124 (Ill. App. Ct. 2013)). When addressing a § 2254 petition, federal courts "take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)).

---

[1] The state appellate court opinion vacating Petitioner's first conviction and remanding the case for new trial is not in the record; nor is it published. *See People v. Alvarado*, 990 N.E.2d 938 (Ill. App. Ct. Dist. 2010). Neither the state appellate court in Petitioner's second appeal nor the parties discuss the grounds for the reversal of his first conviction.

Following the shooting death of defendant's wife, the State indicted him on three counts of first degree murder (720 ILCS 5/9–1(a)(1) (West 2006)). Police conducted a videotaped interrogation after defendant's arrest. In the video, defendant admits to shooting his wife after he learned that she had an extramarital affair. Prior to trial, defendant filed a motion to suppress the video because the police officers had ignored his request for counsel. The trial court granted defendant's motion, and the video was suppressed. The cause proceeded to a jury trial where defendant was convicted of first degree murder. However, on appeal, this court remanded the cause for a new trial. *Alvarado*, No. 3–08–0200.

During the second trial, defendant testified that, while engaging in intercourse with his wife, he noticed that she was behaving differently when performing oral sex. When he inquired into the new technique, she became nervous and evasive. The couple went into their bathroom and continued the conversation while sitting on the floor and smoking cigarettes. Eventually, she admitted to kissing another man while she was at a convention in Springfield; however, she continued to be evasive about the oral sex technique. Defendant became frustrated and retrieved a loaded pistol from a box in the bathroom closet. He hoped to frighten her so she would tell him the truth. Apparently frightened, she admitted to an affair. Defendant became so upset that he started shaking. Defendant testified that he did not remember what happened next, but he did remember seeing his wife slumped over with a red mark on her chest.

Officer Robert Wood testified that after arriving at the scene, defendant explained that he had learned his wife had had an affair and that he "lost it." Deputy Sheriff Doug Pastirik testified that defendant said he could not believe that he had ruined his life, asked how he could tell his children about the stupid thing that he had just done, and said several times that he had "screwed up."

Defense counsel sought to play the last two minutes of the video of defendant's interrogation with police. That portion showed defendant's reaction to the news that his wife had died. The State argued that the completeness doctrine permitted it to have the rest of the interrogation shown to the jury because the remainder placed defendant's reaction to his wife's passing in perspective. Defendant disagreed and argued that the two-minute portion of the video should not open the door to the rest of the interrogation. The trial court determined that playing only the two-minute portion would be "self-serving" and that the rest of the interrogation included other indicators

2

of defendant's state of mind. Therefore, the court stated that it would not permit defendant to show only the final two minutes; defendant could either play the entire interrogation for the jury or none of it. Defendant decided to show the interrogation, and it was played for the jury during the presentation of defendant's evidence.

In closing argument, defendant argued that he lacked the mental state for murder but that he was guilty of involuntary manslaughter. During its deliberations, the jury requested a transcript of the interrogation. Defendant objected. The trial court decided that, while it would not show the jury a transcript, it would replay the interrogation. After the video was played, the jury continued its deliberation and eventually found defendant guilty of first degree murder. Defendant received a 45–year sentence. The sentence included a 25–year enhancement because while committing the offense of first degree murder, defendant had discharged a firearm that proximately caused the death of the victim.

[18-1] at 2–3.

On direct appeal, Petitioner argued that: (1) the trial court erred when it required Petitioner to play all or none of the videotaped interrogation; (2) the trial court erred when it allowed the jury to view the interrogation video during its deliberations; and (3) Petitioner should be able to receive day-for-day credit for the 25-year enhanced portion of his sentence. *Id.* at 3–5. The state appellate court rejected all three claims. *Id.* Petitioner's petition for leave to appeal (PLA) to the Illinois Supreme Court argued only the sentencing claim about day-for-day credit. *Id.* at 167–77. The Illinois Supreme Court denied the PLA. [18-2] at 1.

Petitioner then filed a state post-conviction petition, which the state trial court summarily dismissed as frivolous or patently without merit. [18-3] at 499–531, 539. With counsel, Petitioner appealed, arguing that: (1) his attorney on direct appeal was ineffective for failing to argue trial court error in the refusal to strike jurors who

acknowledged reading or hearing that Petitioner had been previously convicted of the charged offense and was being retried; and (2) his appellate attorney was ineffective for failing to argue trial court error in the denial of Petitioner's request for jury instructions on the definitions of "intent" and "knowledge." [18-2] at 101–02 (*People v. Alvarado*, 2017 IL App (3d) 140895-U, ¶ 22, 2017 WL 282252 (Ill. App. Ct. 2017)).

The state appellate court denied both claims and affirmed the trial court's summary dismissal of the post-conviction petition. *Id.* at 102–09. Petitioner raised the same two claims in a PLA, [18-3] at 2–24, which the Illinois Supreme Court denied. *Id.* at 37 (*People v. Alvarado*, 93 N.E.3d 1069 (Ill. 2017)).

Petitioner then filed a § 2254 petition, which argues the following claims:

(1) the trial court erred in requiring Petitioner to show either all or none of his videotaped interrogation;

(2) the trial court erred when it allowed the jury to view the videotaped interrogation a second time during deliberations;

(3) Petitioner's attorney on direct appeal was ineffective for failing to argue trial court error with its determination that jurors who knew Petitioner had been previously convicted and was being retried were nonetheless impartial; and,

(4) appellate counsel was ineffective for not arguing the trial court erred by not instructing the jury on the definitions of "intent" and "knowledge."

[1] at 5–15. Respondent answered the petition, [17], arguing that claims one and two are procedurally defaulted and that claims three and four lack merit. Petitioner filed a reply in support of his petition, [22], and his claims thus are fully briefed. The Court considers Petitioner's claims below.

4

<u>Analysis of Petitioner's Claims</u>

**A.     Claims One and Two**

In claim one, Petitioner argues that the trial court erred in requiring Petitioner to show the jury all or none of his videotaped interrogation and precluding him from showing just the last two minutes, as he desired.  In claim two, Petitioner argues that the trial court erred when, in response to a transcript request from the jury, it allowed the jury to watch the videotaped interrogation a second time during deliberations.  Respondent argues that both of these claims are procedurally defaulted.  And, for the reasons explained more fully below, this Court agrees.

**1.     Procedural Default**

A § 2254 claim can be procedurally defaulted in two ways.  The first occurs when a prisoner fails to fully exhaust state court remedies for his federal claim and he no longer has the ability to do so under the state's procedural laws.  *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016).  Prior to seeking federal habeas relief, state prisoners must exhaust the "remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  A petitioner must "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," which is done "by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

The second type of procedural default "comes from the independent and adequate state ground doctrine."  *Thomas*, 822 F.3d at 384 (citing *Coleman v.*

*Thompson*, 501 U.S. 722, 729–30 (1991)). When a state court "refuses to reach the merits of a petitioner's federal claims because they were not raised in accord with the state's procedural rules . . ., that decision rests on independent and adequate state procedural grounds." *Kaczmarek v. Rednour*, 627 F.3d 586, 591 (7th Cir. 2010).

Both types of procedural default are based on principles of "comity, finality, and federalism." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017); *Thomas*, 822 F.3d at 384. "State courts, like federal courts, are obliged to enforce federal law," and when a petitioner alleges his state conviction violates the Constitution, "state courts should have the first opportunity to review this claim and provide any necessary relief." *Boerckel*, 526 U.S. at 844. Failing to present constitutional challenges to the state courts, or presenting them in a way that does not comply with state law, deprives the state courts of an "opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

Petitioner raised claims one and two on direct appeal in the state appellate court. [18-1] at 3–5. But he did not raise these claims in his PLA to the Illinois Supreme Court following the appeal; his PLA on direct review argued only the sentencing issue about receiving day-for-day credit for the 25-year enhancement part of his sentence. *Id.* at 167–77. Nor did Petitioner raise claims one or two in his post-conviction appeal or PLA; the post-conviction appeal and PLA argued only trial court errors for declining to strike jurors and refusing to instruct the jury on "intent" and "knowledge." [18-2] at 101–02 (post-conviction appeal); [18-3] at 2–24 (post-conviction PLA).

In short, Petitioner never presented claims one or two to the Illinois Supreme Court. A "petition for discretionary review in Illinois' Supreme Court" remains an "established part of the State's appellate review process." *Boerckel*, 526 U.S. at 845. A § 2254 petitioner's "failure to present . . . his federal habeas claims to the Illinois Supreme Court in a timely fashion . . . result[s] in a procedural default of those claims." *Id.* at 848. Claims one and two thus are unexhausted and procedurally defaulted.

### 2. Exceptions to Excuse Procedural Default

Procedural default may be excused, however, where the petitioner "demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice,'" i.e., that new, reliable evidence exists demonstrating that no reasonable trier of fact would have found the petitioner guilty. *Thomas*, 822 F.3d at 386 (quoting *Coleman*, 501 U.S. at 750). Petitioner demonstrates neither cause and prejudice, nor a fundamental miscarriage of justice.

Petitioner argues that his attorney's failure to raise claims one and two in the PLA on direct review constituted cause for failing to fully exhaust the claims. [22] at 1–7. This argument fails for two reasons.

First, to demonstrate cause, the prisoner must "show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Davila*, 137 S. Ct. at 2065. "Mistakes by counsel are imputed to the client," and thus "not cause to excuse a procedural default." *Crutchfield v. Dennison*, 910

F.3d 968, 973 (7th Cir. 2018). Although an error by counsel that amounts to ineffective assistance under the Sixth Amendment may constitute an external factor, *id.*, there is "no constitutional right to any assistance of counsel in seeking discretionary, third-tier review, and shortcomings of counsel at that stage therefore cannot violate the sixth amendment." *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (citation omitted); *see also Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (no constitutional requirement exists "to provide . . . counsel [for a] discretionary appeal to the State Supreme Court"). Petitioner's claim that the attorney who drafted his PLA on direct review was ineffective is not a constitutional claim of ineffective assistance of counsel and is not a basis for cause to excuse the procedural default.

Second, even if the ineffectiveness of Petitioner's PLA attorney could constitute cause, such a reason for the default must, itself, be properly preserved and exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner has not presented to the state courts a claim that his attorney was ineffective for failing to raise claims one and two in his PLA on direct appeal. Petitioner has not established cause to excuse his procedural default on claims one and two.

Nor has Petitioner demonstrated that a fundamental miscarriage of justice would result absent federal habeas review of these claims. This exception is reserved for the truly exceptional case where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citation omitted); *McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) (the

8

exception "applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted.") . Petitioner must offer "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Jones v. Calloway*, 842 F.3d 454, 461 (7th Cir. 2016) (citation omitted).

Petitioner here does not argue that he is actually innocent; nor does he offer any new evidence of his innocence. Instead, he argues that the jury was permitted to see a videotape of him refusing to sign a waiver of his *Miranda* rights and specifically invoking his right to counsel. [22] at 7–8. Though Petitioner contends that the jury's viewing of the entire videotaped statement violated his Fifth and Sixth Amendment rights to remain silent and to counsel, and thus was a miscarriage of justice, *id.*, the fundamental miscarriage of justice exception to procedural default requires a showing of actual innocence, not just a showing that constitutional violations occurred. Here, Petitioner has failed to show any error by the trial court, much less the requisite showing for the miscarriage of justice exception.

Because claims one and two are procedurally defaulted, and because Petitioner has demonstrated neither cause and prejudice, nor a fundamental miscarriage of justice to excuse the default, the Court denies these claims.

## B.    Claim Three

In claim three, Petitioner argues that his attorney on direct appeal was ineffective for not arguing that the trial court erred when determining the

impartiality of jurors during *voir dire*. [1] at 6. Petitioner contends that several members of the venire acknowledged knowing that Petitioner had been convicted for murdering his wife and that the case was remanded for a new trial; yet they were allowed to serve on the jury. *Id.*

The state appellate court on post-conviction review held that Petitioner could not establish the prejudice prong of his ineffective assistance claim because the underlying claim lacked merit. [18-2] at 103–06. According to the state appellate court, "the record affirmatively demonstrates that the jurors selected would be impartial in considering defendant's guilt and would follow the principles of law provided by the court," thus precluding any claim of prejudice. *Id.* at 105. Because the trial court properly determined that the jurors were not biased, raising the claim on appeal would have been meritless.

Under 28 U.S.C. § 2254(d)'s deferential standard of review, federal habeas relief is available for this claim only if Petitioner shows that the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner cannot make either showing.

Neither conclusion by the state appellate court—(1) that Petitioner could not establish ineffective assistance with his attorney on direct appeal, or (2) that the trial

court committed no reversible error when finding the absence of bias with jurors—was contrary to or an unreasonable application of clearly established federal law. Nor was the state appellate court's decision an unreasonable determination of the facts in light of the record.

### 1. Ineffective Assistance of Appellate Counsel

With respect to the ineffective assistance claim, the state appellate court cited the correct legal standard and reasonably applied it: "we look to *Strickland v. Washington*, 466 U.S. 668 (1984), when considering a claim of ineffective assistance of appellate counsel. Under *Strickland*, a defendant must show that counsel's performance both "'fell below an objective standard of reasonableness' and the deficient performance prejudiced the defense." [18-2] at 102–03 (quoting *Strickland*, 466 U.S. at 688); *see also Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (the "general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel"). The state appellate court did not address the deficient performance prong, but instead, determined that Petitioner could demonstrate no prejudice because the underlying claim lacked merit. [18-2] at 103. Such an approach is reasonable and acceptable. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

To establish prejudice with an ineffective assistance of appellate counsel claim, a petitioner "must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (citing *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003)). In other words, prejudice may exist "if the issue not raised 'may have resulted in a reversal of the conviction or an order for a new trial.'" *Lee*, 328 F.3d at 901 (quoted case omitted).

In Petitioner's case, the state appellate court concluded that he could not establish prejudice because the claim not raised by appellate counsel—that the trial court inadequately determined jurors' impartiality after some acknowledged knowing that Petitioner had been previously convicted of the charged offense—lacked merit. As explained below, the state court's conclusion that the juror-bias claim lacked merit finds ample support in the record and thus it was not unreasonable or incorrect.

## 2.    The Trial Court's Refusal to Strike Jurors

On review of the trial court's summary dismissal of Petitioner's post-conviction petition, the state appellate court addressed the merits of the claim that, Petitioner argued, should have raised by his attorney on direct appeal. In particular, the court stated:

> A criminal defendant's right to an impartial jury is guaranteed by both the United States and the Illinois Constitutions. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Metcalfe*, 326 Ill. App. 3d 1008, 1014 (2001). An impartial jury is one in which the jury is "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). A jury's verdict must be based solely on the evidence heard during trial and not information obtained elsewhere. *People v. Taylor*, 101 Ill. 2d 377, 386 (1984). If a

12

defendant is denied his right to a fair trial because of the denial of a challenge for cause to a juror, the defendant must receive a new trial. *Id.* at 387. When determining whether a defendant received a fair trial from an impartial jury, "there is no simple test which we can apply to every case." *Id.* at 391. Instead, we must base our decision on the totality of the circumstances. *Id.*

[18-2] at 103. The court's approach comports with federal law.

The Sixth Amendment "secures to criminal defendants the right to trial by an impartial jury." *Skilling v. United States*, 561 U.S. 358, 377 (2010). A jury must be "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). With respect to juror impartiality, "[n]o hard-and-fast formula dictates the necessary depth or breadth of *voir dire.*" *Skilling*, 561 U.S. at 386 (citing *United States v. Wood*, 299 U.S. 123, 145–46 (1936)). Rather, trial judges have a great deal of discretion "to prevent prejudicial occurrences and to determine the effect of such occurrences [on jurors] when they happen." *Smith*, 455 U.S. at 217; *see also Skilling*, 561 U.S. at 386–87.

Addressing the trial court's determination of the absence of bias, the state appellate court stated:

> Illinois law provides that the right to an impartial jury does not require that jurors be completely ignorant of the case before trial. *People v. Coleman*, 168 Ill. 2d 509, 547 (1995). Heinous crimes are reported extensively in the media, and it would be unreasonable to expect jurors not to have at least heard of those cases prior to trial. *Taylor*, 101 Ill. 2d at 386. An impartial jury can be secured under such circumstances if the jurors are willing and able to put aside their preconceptions and decide the case based upon the evidence presented at trial. *Coleman*, 168 Ill. 2d at 547. In other words, "knowledge of the case will not itself disqualify one for jury service." *Britz*, 185 Ill. App. 3d at 200.

> At the outset, we note that two of the potential jurors (Thompson and Talty) defendant argues the court erred in refusing to strike for

13

cause did not actually sit on the jury. Defendant, therefore, cannot establish prejudice with regard to these two jurors. Of the jurors that actually sat on the jury, four (Vezain, Grady, Stielow, and Schutt) had knowledge of defendant's case. Unlike Thompson and Talty, though, all four jurors specifically stated that they had not formulated an opinion as to defendant's guilt. Jurors Vezain and Grady both indicated that they knew defendant was being retried because of an evidentiary error in the first trial but told the court that they would base their verdict on what occurred in court. In addition, they agreed that any information they had of the previous trial would not influence their decision in this trial. Similarly, both Stielow and Schutt indicated that they had read about defendant's case but had not formed an opinion as to defendant's guilt. Although neither Stielow nor Schutt were individually questioned as to their knowledge of the case or specifically admonished to disregard outside news reports, both agreed that they would consider the evidence presented at trial in making their determination. Thus, the record affirmatively demonstrates that the jurors selected would be impartial in considering defendant's guilt and would follow the principles of law provided by the court. Accordingly, defendant cannot show prejudice resulting from Vezain, Grady, Stielow, and Schutt sitting on the jury.

[18-2] at 104–05.[2]

The record before this Court includes the trial court's and attorneys' questioning of venire jury members, [18-4] at 123–221, and this Court has confirmed that the state appellate court accurately described the *voir dire* process. Upon learning that a number of jurors had read or heard about Petitioner's prior trial and

---

[2] Petitioner's § 2254 petition generally asserts that counsel on direct appeal failed to challenge the trial court's refusal to strike all venire jury members who indicated knowing about Petitioner's prior trial and conviction. [1] at 6. But Petitioner specifically references one juror: Mr. Zbrowski. *Id.* ("Mr. Zbrowski formed an opinion and was allowed to serve as a juror."). As a result, Respondent contends that Petitioner procedurally defaulted claim three because he failed to specifically address Zbrowski in his post-conviction appellate brief. [17] at 6. But the Statement of Facts section of that brief discussed all the venire jury members who indicated they knew about Petitioner's first trial, including Zbrowski. *See* [18-2] at 9 ("Doug Zbrowski read a Chicago Tribune article indicating Alvarado was being retried, but he agreed to decide the case on the evidence before him."). And the bulk of the argument section challenged the trial court's overall approach to assessing impartiality. *See id.* at 23–27. Thus, this Court cannot say the state appellate court was not fairly presented with the juror-bias issue for Zbrowski, and the Court declines to find this claim procedurally defaulted. The claim does, however, lack merit for the reasons stated above, which apply to all the jurors claiming any knowledge of Petitioner's prior case.

14

conviction, the trial court questioned jurors individually, in front of other jurors, and then outside the presence of other jurors. *Id.* at 177–220. While questioning jurors individually in front of other jurors, the trial court repeatedly admonished: "What you have read or heard before, you cannot consider that, that's not evidence. . . . you are entitled to [your opinion], don't get me wrong, but it can't dictate your verdict. Your verdict of guilt or innocence has to be determined from what comes out of this courtroom, that chair, what people testify to or on what exhibits are presented." *Id.* at 177. "I cannot have your verdict based upon what you read or heard from somebody else. It has to come out of this witness chair and this courtroom and the arguments of the lawyers." *Id.* at 179. "Once again, I don't mean to pick on everybody, but we have to make certain, you are entitled to your opinion, but your guilt or innocence votes must come from this courtroom, the evidence that's presented here. What you read or heard about before, forget it, you're going to get to hear the real stuff out of this . . . courtroom[.]" *Id.* at 180. Jurors are presumed to follow court instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Adkins*, 743 F.3d 176, 186 (7th Cir. 2014).

All the jurors, whether asked individually or collectively, answered in the affirmative to questions about whether he or she would decide the case based on what was presented and heard at trial and not on anything heard or read outside the courtroom. *Id.* at 178–82, 206–20.

After the petit jury was empaneled, the trial court repeated that "the verdict you're going to render is based on what comes out of this courtroom." *Id.* at 254. At

the end of trial, the court again instructed jurors: "It is your duty to determine the facts and determine them only from the evidence in this case." *Id.* at 868.

The trial court's approach, and the state appellate court's analysis of that approach, were both in accordance with federal law. "Qualified jurors need not . . . be totally ignorant of the facts and issues involved." *Murphy v. Florida*, 421 U.S. 794, 799–800 (1975). To hold that the "mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 800 (citations omitted). It is "virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it." *Smith*, 455 U.S. at 217.

The post-conviction appellate court's determination that the trial court properly assessed juror impartiality was correct, and thus, neither contrary to, nor an unreasonable application of, clearly established federal law; nor was it an unreasonable determination of facts in light of the record. Had Petitioner's attorney raised the claim on direct appeal, it nonetheless would have failed because it lacked merit. As a result, federal habeas relief is unavailable for this claim, and the Court, accordingly, denies claim three.

C.     **Claim Four**

In claim four, Petitioner argues that his attorney on direct appeal was ineffective for failing to challenge the trial court's refusal to instruct the jury on the definitions of "intent" and "knowledge." [1] at 6. According to Petitioner, his state of mind at the time of the offense was not only in dispute, but also the main issue at trial; as a result, "the trial court's refusal to instruct the jury on the definitions of 'intent' and 'knowledge' . . . deprived him of a fair trial." *Id.*

The state appellate court on post-conviction review addressed this claim on the merits. That court determined, as it did with claim three, that Petitioner could not establish prejudice because the underlying claim, that he contends should have been raised, lacked merit. [18-2] at 106. As to the underlying claim, the state court determined that a jury "need not be instructed on the terms knowingly and intentionally because those terms have a plain meaning within the jury's common knowledge." *Id.* (citing *People v. Powell*, 159 Ill. App. 3d 1005, 1013 (1987)). The court further determined that, although the court must instruct the jury "when it requests clarification or is manifestly confused," such was not the case in Petitioner's trial. *Id.* at 106–07. As a result, the state court held, the trial court "did not abuse its discretion in declining to instruct the jury as to the definitions of intent and knowledge." *Id.* at 107.

The state appellate court's conclusion that the underlying jury-instruction claim was without merit is a determination of state law. *See Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). And it is "not the province of a federal habeas court to

reexamine state-court determinations on state-law." *Id.* at 67–68. Federal habeas relief is for "violation[s] of the Constitution or laws or treaties of the United States," not for violations of state law. 28 U.S.C. § 2254(a). Furthermore, even if this Court could consider the underlying jury-instruction claim, Illinois law clearly instructs that a jury need not "be instructed on the terms knowingly and intentionally because those terms have a plain meaning within the jury's common knowledge." *Powell*, 512 N.E.2d at 1370; *see also People ex rel. City of Chicago v. Le Mirage, Inc.*, 1 N.E.3d 998, 1020 (Ill. App. Ct. 2013).

To the extent Petitioner argues that his attorney on direct appeal was ineffective for failing to raise a state-law jury instruction claim, as determined by the state appellate court, that claim was without merit. The failure to raise a meritless argument on appeal supports neither prong for an ineffective assistance of counsel claim. *See Northern v. Boatwright*, 594 F.3d 555, 561 (7th Cir. 2010).

Although the jury instruction claim Petitioner wanted his appellate attorney to raise appears to involve only a state-law issue, the phrasing of this claim in Petitioner's § 2254 petition arguably presents a federal issue. He asserts that "the trial court's refusal to instruct the jury on the definitions of 'intent' and 'knowledge' . . . deprived him of a fair trial." [1] at 6. A constitutional due process right to a fair trial always exists, and errors, if serious enough, can result in a constitutionally unfair trial. *Garth v. Davis*, 470 F.3d 702, 711 (7th Cir. 2006). But for a violation of the broad constitutional right to a fair trial to occur, the error must have "so infected the entire trial that the resulting conviction violates due process." *Id.* (citing *Estelle*,

502 U.S. at 72); *see also Thomas v. Hodge*, No. 08 C 00819, 2013 WL 6797413, at *8 (N.D. Ill. Dec. 23, 2013). Phrased differently, the error must have been "so serious as to render it likely that an innocent person was convicted." *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004). Petitioner makes no such showing.

First, Petitioner demonstrates no error with the trial court's refusal to define "knowledge" and "intent." As noted above, Illinois does not require such definition instructions under these circumstances. *Powell*, 512 N.E.2d at 1370. Nor does federal law require jury instructions for terms "readily known by laypersons." *United States v. Olofson*, 563 F.3d 652, 660 (7th Cir. 2009) (no jury instruction for the term "automatic" was required); *United States v. Iron Eyes*, 367 F.3d 781, 785 (8th Cir. 2004) (a trial judge is not required to give a jury instruction defining "'knowingly' or 'knowing' . . . because the definition is 'a matter of common knowledge'") (citation omitted); *United States v. Aguilar*, 80 F.3d 329, 331 (9th Cir. 1996) (en banc) ("The district court is not necessarily required to define knowledge for the reason that it is a common word which an average juror can understand and apply without further instruction.").

Second, considering Petitioner's jury instructions on the whole, which is how they must be viewed, *see Estelle*, 502 U.S. at 72, the trial court clearly explained the requisite state of mind needed for first-degree murder and involuntary manslaughter, and the jury exhibited no signs of confusion about the meaning of "knowledge" or "intent." [18-4] at 872–75. Because Petitioner's jury-instruction claim lacked merit, the failure of his attorney on direct appeal to raise the claim did not constitute

ineffective assistance of counsel, and the state appellate court's denial of this claim was neither contrary to, nor an unreasonable application of, federal law. The Court denies claim four.

## D.     Petitioner's Additional Ineffective Assistance of Counsel Claims

The last part of Petitioner's § 2254 petition lists numerous additional instances of ineffective assistance of both trial and appellate counsel. [1] at 8–14. Initially, Petitioner's pleading falls short under § 2254's pleading requirements.[3] Likewise, Petitioner has failed to exhaust these additional claims of ineffective assistance of counsel, as he failed to raise them in one complete round of state court review. *See Boerckel*, 526 U.S. at 845. As explained above, Petitioner's PLAs to the Illinois Supreme Court presented only his claims that: (1) he should receive day-for-day credit for the 25-year enhancement part of his sentence; (2) his appellate attorney was ineffective for failing to argue trial court error for refusing to strike several jurors; and (3) appellate counsel was ineffective for failing to argue the jury-instruction issue with respect to the definitions for intent and knowledge. *See* [18-1] at 167–78 (PLA on direct appeal); [18-3] at 2–24 (PLA on post-conviction review). Petitioner does not explain why he could not have exhausted these claims; nor has he claimed the existence of new evidence demonstrating his innocence. He has not, in

---

[3] The Rules Governing § 2254 Cases require petitioners to "(1) specify all the grounds for relief," and "(2) state the facts supporting each ground." Rule 2(c) of the Rules Governing § 2254 Cases. This rule "requires a more detailed statement" than Federal Rule of Civil Procedure 8(a)(2)'s notice-pleading requirement applicable to ordinary federal complaints. *Mayle v. Felix*, 545 U.S. 644, 649 (2005). "Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). "Section 2254 and Rule 2(c) do not require federal courts to review the entire state record of habeas corpus petitioners to ascertain whether facts exist which support habeas relief." *Johnson v. Tally*, 47 F. Supp. 2d 943, 953 (N.D. Ill. 1999) (citations omitted).

short, offered any basis to excuse his procedural default. As a result, the Court denies the ineffective assistance claims listed at the end of Petitioner's § 2254 petition.

For all the reasons stated above, Petitioner's claims are denied, and the Court denies his § 2254 petition with prejudice.

### Certificate of Appealability and Notice of Appeal Rights

The denial of Petitioner's petition is a final decision ending this case. If he seeks to appeal, Petitioner must file a notice of appeal in this Court within 30 days judgment is entered. Fed. R. App. P. 4(a)(1). He need not bring a motion to reconsider this decision to preserve his appellate right, but if he wishes the Court to reconsider its judgment, he may file a motion under Fed. R. Civ. P. 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Fed. R. Civ. P. 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. Petitioner cannot make a substantial showing of the denial of a constitutional right and cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims. *Arredondo v.*

*Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983).

## Conclusion

For the reasons explained above, this Court denies Petitioner's habeas corpus petition [1] and denies as moot all pending motions. The Court declines to issue a certificate of appealability. The Clerk is directed to: (1) add David Gomez, Stateville Correctional Center's current warden, as Respondent; (2) terminate Randy Pfister as Respondent; (3) change the case caption to *Alvarado v. Gomez*; and (4) enter judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: March 22, 2021

Entered:

John Robert Blakey
United States District Judge